UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-21697-CV-LENARD/GOODMAN

UNITED STATES OF AMERICA,

        Plaintiff,

v.

TWENTY- NINE PRE-COLUMBIAN AND
COLONIAL ARTIFACTS FROM PERU,

        Defendant.

_____/

## GOVERNMENT'S RESPONSE TO CLAIMANT'S MOTION FOR PROTECTIVE ORDER

In response to Claimant's motion for protective order, the government states:

A.  THE MOTION FOR A PROTECTIVE ORDER SHOULD BE DENIED BECAUSE CLAIMANT HAS NOT MET HIS BURDEN OF PROOF UNDER FED. RULE OF CIVIL PRODCEDURE 26(c).

The party seeking a protective order under Federal Rule of Civil Procedure 26 has the burden of establishing good cause, and he must meet his burden by making a "particular and specific demonstration of fact as distinguishable from stereotyped and conclusory statements." *Ekokotu v. Federal Express*, 408 Fed. Appx. 331, 336 (11th Cir. 2011); *Culhane v. MSC Cruises*, 290 FRD 565 (S.D.F.L. 2013).

Good cause must be actually established, not merely alleged. *U.S. v. Talco Contractors*, 153 FRD 501, 513 (W.D.N.Y. 1994). "Broad allegations of harm, unsubstantiated by specific examples of articulated reasoning, do not satisfy the Rule 26(e) test," *Cipillone v. Liggett Group*, 785 Fd 1108, 1121 (3d 1986), and the moving party must show that "disclosure will work a clearly defined and serious injury." *Cuno Incorp. v. Pall Corporation*, 117 FRD 506, 508 (E.D. N.Y. 1987).

Claimant's motion, far from meeting this standard, consists almost entirely of generalities, some of which, indeed, are so general that they seem to come from another case entirely.  The only specific allegation of fact contained in the seven pages of text that constitute the Claimant's motion is to be found at the bottom of page two, top of page three.  At the top of page three, Claimant reports that his apprehension of harm is caused by the breadth of the document subpoenas issued to witnesses Walker, Rifkin and Reid.[1]

Claimant does not explain his basis for thinking that these subpoenas are "too broad" for a civil case, nor does he refer to any authority as establishing  the line between document subpoenas which   are civil, and which criminal, in nature.   All civil forfeiture cases are *based on the commission of a crime,* and it is the prosecutor's duty to establish the commission of that crime, in all its parts, to the satisfaction of a jury.   There is no apparent reason, so far as we can see, why the document requests in one should be markedly different from the other.

Although it is not to the point- the point being that the subpoenas were entirely appropriate- we wish to add some information that would perhaps have allayed counsel's fears if they had asked government counsel what had happened to the subpoenas.  Mr. Walker called government counsel shortly after the subpoenas were served.  After a discussion of the kinds of records Mr. Walker maintained, and the way in which he maintained them, we advised him that of the seven numbered document requests, he need only respond to one.  That one request is presently the subject of the litigation in New Mexico.  Also, we would not say, as suggested by Claimant's counsel, that we were "struggling" with Mr. Walker – we would say that we are having a reasonable disagreement about the parameters of the conservator privilege.

---

[1] In fact, that allegation is wrong: document subpoenas were sent only to witnesses Rifkin and Walker, not Reid.

2

Mr. Rifkin and government counsel exchanged several pleasant emails, and he eventually hired

local counsel. His attorney, James McGuirk, and government counsel are presently working on

an agreement that will be satisfactory to both parties.

B.     THE MOTION SHOULD BE DENIED BECAUSE IT WAS NOT FILED IN GOOD
FAITH BUT AS A LAST-MINUTE ATTEMPT TO OBTAIN A CONTINUANCE IN THIS
CASE.

On June 20, Claimant suddenly raised the issue of a protective order, near the end of the

discovery period in this case, and after his client had been scheduled for, and missed, four deposition

dates, and was scheduled for a fifth in ten days.[2]  Claimant's counsel's explanation for this late

---

[2]     We should note that at the June 26 hearing, Mr. Gewirtz stated that he had served a
"proposed protective order" on government counsel (attached.) However, it appeared to be a blanket
confidentiality agreement between counsel, intended to apply to all the witnesses in a case intended
to be deposed.  No specific mention of the names of any of our prospective witnesses, or the subjects
of their testimony, was included.  By return email I told Mr. Soller that I was puzzled by it and asked
him to explain its purpose Mr. Soller did not reply to the question until May 30, when he referred to
it as one of several subjects in an email.  Counsel responded that we had not understood the purpose
of the proposed order.  Mr. Soller responded:

> "Karen – Basically this is "standard" in civil litigation where disclosure to the
> "public" would disclose "proprietary information" confidential "client/customer
> information" or information to "enforcement" entities or is "privileged.
> "Designation of particular "statements" or documents" would be made prior to
> disclosure or as soon as it is determined that the information must be kept

awakening is that they did not realize that there was a threat of criminal jeopardy to their client until they read the subpoenas for documents the government had sent to witnesses Rifkin and Walker.  At the hearing on June 26, Mr. Gewirtz told the court that they had not seen the Rifkin and Walker subpoenas before then, because government counsel had not sent them copies of the subpoenas, as required by  Federal Rule of Civil Procedure 45.

Mr. Gewirtz's statement, which was discussed at some length at the hearing, ( transcript of June 26 hearing at pages 9-16 )  was not true.  Government counsel has since checked the records and determined that the Rifkin and Walker subpoenas were duly sent to Claimant's counsel at the time of service on April 17 (Walker) and April 24 (Rifkin.) (see attachment 1).  Claimant was therefore well aware of the content of the subpoenas two months before the June 26 hearing, and could have raised this issue in April or May.  Furthermore, several important things happened between April and June 26 that indicated that Claimant's counsel *did not* need a protective order:

1.      Since Claimant's counsel received the Rifkin and Walker subpoenas, Mr. Soller and Mr. Gewirtz have confirmed four deposition dates (May 10, May 22,  June 12 and June 30) without apparent need for a protective order.

2.      On May 13, government counsel sent a draft copy of our motion to compel Mr. Combe's attendance at the June 12 deposition to Claimant's counsel (DE 44), and subsequently conferred with Mr.  Gewirtz as required by Local Rule 7.

---

confidential.  In the art world, particularly, disclosure of clients/customers or sources who have become "trading partners" or contacts often destroys any trusting relationships frequently in place for years.  Obviously, disclosure to enforcement could have even more disastrous impact.  After review of proposed orders previously sent please get back to us. Thanks, Carl"

In response, counsel replied that we would look at it again after June 12 deposition which was the next week.  Neither counsel nor Mr. Soller ever returned to the subject, and the motion was never signed.

During that Rule 7 conversation, Mr. Gewirtz advised government counsel that he opposed the motion to compel testimony because it was unnecessary, since Mr. Combe had every intention of attending the June 12 deposition voluntarily.   During that conversation, Mr. Gewirtz gave no indication that he wanted a protective order for his client.

DE 44 also requested a one-month extension of the discovery deadline: as to that, Mr. Gewirtz advised us that they, also, intended to ask the Court for a continuance, on the grounds that discovery in this case was too complex to complete by August.   The complexity, Mr. Gewirtz explained, was principally caused by their need to depose Peruvian officials.   Mr. Gewirtz then asked government counsel to join in their request for a several-month continuance, rather than filing our request for one month.   Government counsel declined, on the grounds that we only needed one month, and filed what is now DE 44.   In the Rule 7 certificate to DE 44, the government duly noted that Mr. Gewirtz opposed the motion to compel because the Claimant intended to appear at the deposition voluntarily, but that he "is not opposed to the extension of time."   That notation in the Rule 7 Certificate refers to Mr. Gewirtz's wish for a several-month extension of the deadline – the extension he is just now requesting.

3.      On June 4, this Court held a hearing on our motion to compel Claimant's attendance at the June 12 deposition (DE 44).   To our surprise, at the beginning of the hearing Mr. Gewirtz announced that they were withdrawing their request for a "safe passage", and that Mr. Combe would attend the June 12 deposition without further objection.   Again, Mr. Gewirtz made no mention of needing a protective order for his client, to either the Court or counsel.

4.      Finally, on June 19, eleven days before Mr. Combe's last deposition was scheduled, government counsel sent an email to Mr. Soller asking him to let us know as soon as possible if his client decided to cancel the deposition again.[3]  Mr. Soller said that he would, and again made no mention of needing a protective order.

5.      On the next day, June 20, Claimant filed their cross notice of hearing (DE 64) requesting a stay, a protective order, and transfer of the case to the complex track.

This series of events suggests that the request for a protective order on June 26 was intended as a delaying tactic: also, that Claimant's counsel have intended to ask the Court for a lengthy continuance for, at a minimum, several weeks now.

### C.  THE MOTION SHOULD BE DENIED BECAUSE IT WOULD ENCOURAGE FALSE TESTIMONY AND FALSIFICATION OF DOCUMENTS

It may generally be said that a Court should encourage the giving of truthful testimony and discourage the giving of false testimony.  The United States is particularly concerned about the danger of perjury and presentation of false evidence in this case.  The granting of a protective order in any case can facilitate the giving of false testimony by a civil claimant in order to gain possession of a seized asset[4]. Ordinarily the safeguard against such false testimony is the threat of prosecution for perjury. This is an effective threat for claimants who live in the community, but it is not an effective threat to someone like Mr. Combe, over whom the Court has no authority and against whom it can impose no sanction.

---

[3] It takes significant time to arrange for hotel reservations, flights to New York, a court reporter, and a translator, and then have to cancel them all, and we had had to do that once. Despite our precautions, Combe did cancel at the last minute and we had to do it again.

[4] Courts have recognized that significant danger of false claims in these *in rem* proceedings.  *U.S. v. $100,348 in U.S. currency*, 354 F.3d 1110, 1118-19 (9th Cir. 2004); *U.S. v. Mercado,* 873 F 2d 641, 645 (2d Cir. 1989)

Granting the proposed protective order would particularly facilitate the presentation of false documents in a case in which the authenticity of documents establishing ownership is critical.  It would seem to the government that an innocent owner of such precious and unique artifacts would have come forward and presented the documents establishing his ownership soon after the 2010 seizure, rather than waiting three years and spending hundreds of thousands of dollars in litigation to recover them.  Here, it is already July 10, forty days *after* the documents were due to be produced, and six weeks from the discovery deadline, and Mr. Combe still has produced nothing that supports his claim of ownership.

Under these circumstances, the government can hardly be accused of undue suspicion in wondering exactly what kind of documents we are going to get if or when Mr. Combe finally does produce them.

Granting the proposed protective order would materially assist the Claimant in presenting falsified documents by stopping the government from investigation in Peru. The government, of course, has a duty to investigate in order to corroborate the truth of Claimant's statements under oath, as well as the authenticity of the documents he presents. Since we presently believe that claimant acquired the documents in Peru, that investigation will necessarily be conducted in Peru, and the United States cannot investigate in Peru without notice to the Peruvian government.

The proposed protective order entirely precludes the possibility of any such investigation, thus neatly making it possible for the Claimant to come to the United States, give false testimony, produce false documents, and then prevent the government from investigating the truth of his statements or the authenticity of the documents by invoking the protective order.

This is precisely the situation Rule 981(g)(3) was designed to prevent.  The Court should not enter an order which allows the Claimant to receive benefit of discovery while limiting the

Government's ability to investigate the authenticity of Claimant's evidence.  If this Court were to deny Claimant's request for a stay, but impose the protective order, that is exactly what would result.

      For all of the above reasons, Claimant's motion should be denied.

                      Respectfully submitted,

                      WIFREDO A. FERRER
                      UNITED STATES ATTORNEY

BY:    */s/* Karen Moore
        KAREN E. MOORE
        ASSISTANT UNITED STATES ATTORNEY
        Court No. A5500043
        99 N.E. Fourth Street
        Miami, Florida 33132-2111
        Tel: (305)961-9030
        Fax: (305)536-7599
        Karen.Moore@usdoj.gov

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on July 10, 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

                BY:    /s/ Karen E. Moore
                      KAREN E. MOORE
                      ASSISTANT U.S. ATTORNEY