## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### CASE NO. 13-21697-CIV-LENARD/GOODMAN

UNITED STATES OF AMERICA,

     Plaintiff,

v.

TWENTY-NINE PRE-COLUMBIAN AND
COLONIAL ARTIFACTS FROM PERU, *et al.*,

     Defendants.

_____/

### ORDER ON MOTION TO "DISMISS" CLAIMANT'S CLAIM

U.S. District Court Judge Joan A. Lenard referred to the Undersigned [ECF No. 94] the United States' (the "Government") Motion to Dismiss the Claim for Failure to Produce Discovery (the "Motion") [ECF No. 87]. The Undersigned has reviewed the Plaintiff's Motion, Claimant Jean Combe-Fritz's ("Claimant") response in opposition [ECF No. 95], and the Government's reply in support of its Motion [ECF No. 104]. In addition, the Court held a multi-hour hearing (the "Hearing") on September 9, 2014. For the reasons outlined below, the Undersigned **denies** the Motion, which seeks only the

extreme and most-severe remedy of dismissal of the only claim in this *in rem* civil forfeiture action.[1]

### I.      Background

This is an *in rem* civil forfeiture action. According to the Verified Complaint, Claimant Jean Combe Fritz ("Claimant"), a Peruvian citizen, entered the United States at Miami International Airport on August 21, 2010. [ECF No. 1, p. 3]. During a secondary examination, U.S. Customs and Border Protection ("CBP") discovered the artifacts at issue in these consolidated cases in Claimant's luggage.[2] [*Id.* at 3-4]. The Government alleges that Claimant gave conflicting explanations to CBP about the artifacts, but eventually admitted they were to be sent to three individuals on a list that

---

[1]      A United States Magistrate Judge has authority to enter an order (as opposed to a report and recommendations) denying sanctions. *QBE Ins. Corp. v. Jorda Enters., Inc.*, 277 F.R.D. 767, 683 n.2 (S.D. Fla. 2012) (noting that the nature of the sanctions actually imposed, if any, dictates whether a magistrate judge has authority to enter an order). *See generally Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1519-20 (10th Cir. 1995) ("[e]ven though a movant requests a sanction that would be dispositive, if the magistrate judge does not impose a dispositive sanction," then the order is treated as not dispositive under Federal Rule of Civil Procedure 72(a).).

[2]      Originally, two separate civil forfeiture actions were filed, though they both arose from the same set of events.  This was the first-filed action, and concerned twenty-nine of thirty-two artifacts detained by CBP officials on August 21, 2010. The Government alleges in this case that the twenty-nine artifacts are cultural objects subject to forfeiture under the Cultural Property Implementation Act ("CPIA"), 19 U.S.C. §§ 2601-2613. The second action concerns the final three artifacts, which the Government alleges are stolen cultural property subject to forfeiture pursuant to 19 U.S.C. § 1595a. *United States v. Three Artifacts Constituting Cultural Property from Peru*, No. 13-22585-JAL (S.D. Fla. July 18, 2013). The two cases were consolidated under this case number. [ECF No. 9].

Claimant's father had given him. *See United States v. Three Artifacts Constituting Cultural Property from Peru*, No. 13-22585-JAL, ECF No. 1, p. 4 (S.D. Fla. July 18, 2013). CBP detained the artifacts at that time. [*Id.*; ECF No. 1, p. 1].

The Government did not file this forfeiture action until May 10, 2013, nearly three years after the artifacts were first taken from Claimant. [ECF No. 1]. The Government claims that Claimant has not appeared for five noticed depositions, and those failures are the grounds for the Government's Motion to Dismiss at issue here.[3] As outlined below, however, this claim overstates the procedural history.

On February 12, 2014, the Government first noticed Claimant's deposition for March 13, 2014. [ECF No. 87, p. 2]. Claimant attempted to prevent the deposition from

_____

[3]     The United States Attorney's Office advised at the Hearing that it took over this forfeiture proceeding from CBP in the Fall of 2012, after Claimant filed the requisite costs bond to compel the filing of a forfeiture lawsuit. The Government filed this lawsuit in mid-May 2013 and filed the related lawsuit concerning three other artifacts [Case No. 13-22585-JAL] on July 18, 2013.  Claimant's now-denied motion to dismiss asserted several arguments alleging a denial of due process -- but did not assert the Government's delay in filing the lawsuit after he posted the bond as a due process violation. Instead, Claimant contended that the United States (1) improperly denied him the opportunity to apply for remission or mitigation before initiating summary forfeiture proceedings, (2) inappropriately divided the seizures into two separate actions, and (3) failed to render a timely decision on the admissibility of the merchandise. [ECF No. 17, pp. 7-13]. The District Court recently denied [ECF No. 116] Claimant's dismissal motion on all three grounds. In denying the due process portion of the motion, the District Court noted that Claimant failed to timely file a protest to the CBP's failure to make a final determination about admissibility, thereby rendering the inactivity a final and conclusive decision to exclude the artifacts.  [ECF No. 116, pp. 10-12]. Claimant had until May 19, 2011 to protest the final determination but he did not do so. [*Id.* at 10]. Because Claimant's motion to dismiss did not address the Government's delay in filing the civil forfeiture lawsuits, the District Court did not discuss that issue in its order.

going forward until his then-pending motion to dismiss was resolved, but the prior magistrate judge assigned to this case (Magistrate Judge John O'Sullivan) ordered that Claimant's deposition should go forward, to a time to be set by the Government after consultation with Claimant's counsel. [ECF No. 42]. Subsequently, the Government unsuccessfully noticed or attempted to notice Claimant's deposition for four additional dates. [*Id.*] The fact discovery deadline in this case was extended once by the district court, but expired on September 1, 2014. [ECF No. 105].

The United States did not attempt to reschedule Claimant's deposition during the enlarged discovery period (i.e., from the August 19, 2014 Order granting Claimant's motion for a two-week extension of the discovery deadline until the September 1, 2014 expiration of the extension). Claimant did not take any depositions during this extended discovery period, either. Claimant noticed the depositions of five CBP officers in Miami but his counsel (whose office is in New York City) did not appear at the Miami location he selected for the depositions. At the Hearing, Claimant's counsel said he assumed that the Government would not produce its witnesses for the noticed depositions because Government counsel advised him that he had provided insufficient time to prepare her witnesses for the deposition. Through apparent miscommunication, confusion or a combination of both, Government counsel produced two witnesses for deposition but those two depositions never went forward and the other three officers

were advised not to appear later in the day for their depositions because Claimant's counsel had not appeared.

## II.      Analysis

The Motion argues that Claimant's claim should be dismissed pursuant to Federal Rule of Civil Procedure 37(b) or (d) for Claimant's failure to appear for deposition. [ECF No. 87, p. 1]. According to the Government, this failure "constitutes willful and deliberate disobedience of a Court Order, and has greatly prejudiced the government's ability to prepare for trial." [*Id.*]

Under Rule 37, a court has broad authority to control discovery, "including dismissal as the most severe sanction." *Gratton v. Great Am. Commc'ns*, 178 F.3d 1373, 1374 (11th Cir. 1999); *see also* Fed. R. Civ. P. 37. However, the Eleventh Circuit has recognized that "'[d]ismissal with prejudice is the most severe Rule 37 sanction and is not favored,'" although "'dismissal may be appropriate when a plaintiff's recalcitrance is due to wilfulness, bad faith or fault.'" *Mene v. Marriott Int'l Inc.*, 238 F. App'x 579, 582 (11th Cir. 2007) (quoting *Phipps v. Blakeney*, 8 F.3d 788, 790 (11th Cir. 1993)).

### a.   The Government's Failure to Comply with Local Rule 7.1.

Local Rule 7.1(a)(3), "Pre-Filing Conferences Required of Counsel," **requires**, except in a few enumerated circumstances, that, prior to filing any motion, movant's counsel must "make reasonable effort to confer (orally or in writing), with all parties or non-parties who may be affected by the relief sought in the motion in a good faith effort

5

to resolve by agreement the issues raised in the motion." The rule requires that each motion include a conferral statement showing what, if any, efforts were made to resolve the subject of the motion, and it provides that failure to comply with the rule may be cause to deny the motion.

Despite Government counsel's argument to the contrary, the Motion at issue here is **not** one of those enumerated exceptions to the local conferral rule. Although a motion to dismiss is one of the exceptions to the mandatory pre-filing conferral requirement, the Motion is, despite its title, actually a motion for sanctions brought pursuant to Rule 37. The specific sanction sought, and in fact the only sanction sought, is that the only claim challenging the requested forfeiture be dismissed. Be that as it may, and despite the styling of the Motion as a motion to dismiss, the Motion is, quite clearly, a motion for discovery sanctions under Rule 37 -- and is therefore subject to the Local Rule 7.1 conferral requirement.

The Motion itself expressly relies upon Rule 37, the rule outlining the sanctions available for failures to comply with discovery obligations. [ECF No. 87, p. 1]. Although dismissal is *a* remedy mentioned in the rule, it is only one of several types of relief listed as available sanctions. Government counsel acknowledged at the Hearing that the motion to "dismiss" is actually a discovery motion relying on Rule 37.

A movant cannot avoid the Local Rule 7.1 conferral requirement simply by styling its motion as if it were one of those specifically enumerated exceptions to the

6

mandatory pre-filing conferral rule. The mere fact that Government counsel decided to pursue only the most-severe discovery sanctions remedy available, dismissal, does not transform the motion from a discovery motion (which requires a pre-filing conferral) to a motion to dismiss (which does not). The Motion, which expressly mentions Rule 37 as the legal authority for the requested sanctions, failed to include a conferral statement, and this failure alone is adequate grounds to deny the Motion.[4]

If Government counsel had contacted Claimant's counsel before filing the Motion and clearly advised of the Government's belief that Claimant's stated reasons for canceling the depositions were part of a strategy to avoid giving deposition testimony in person in the United States and of the Government's intent to seek an order dismissing or striking Claimant's claim for failure to appear at noticed depositions, then Claimant's counsel may have been able to persuade Claimant to set aside his stated concerns and appear for a deposition. But the consequences of such a hypothetical conferral are unknown because the mandatory pre-filing conference never occurred. The Undersigned therefore denies the Motion on this ground alone.

---

[4]    Government counsel should have been sensitized to the need to have a Local Rule 7.1 conferral before filing the motion because the Court struck an earlier motion it filed to compel attendance at deposition for failing to confer and failing to file a certificate of conferral. [ECF No. 46].

### b. Was there a court order?

On March 25, 2014, Judge O'Sullivan, the prior-assigned magistrate judge, entered an order (the "March 25 Order") stating that "the deposition of Jean Combe Fritz shall go forward at this time.  The date, time and place for the deposition **shall be set by the government after consultation with claimant's counsel."** (emphasis added). [ECF No. 42, p. 1].  In the order, Judge O'Sullivan noted that he had held "an informal discovery conference" on Claimant's request of "whether to set the date, time, and place of the deposition of [Claimant] at this time." [*Id.*]. As specifically noted in the notice of hearing [ECF No. 40] that triggered that informal discovery conference and the March 25 Order, the issue at that time was whether Claimant's deposition should go forward while Claimant's dispositive motion to dismiss was still pending before the district court. Judge O'Sullivan found that the mere pendency of a dispositive motion did *not* warrant putting Claimant's deposition on hold, and he rejected Claimant's request for a *de facto* stay until resolution of the threshold dismissal motion. [ECF No. 42, p. 1]. Although the written order did not specifically state this, the parties advised at the Hearing before me that Judge O'Sullivan also rejected Claimant's suggestion that his deposition be taken by video from Peru.

Claimant argues that Judge O'Sullivan's March 25 Order is not the type of order which would justify discovery sanctions if not followed, while the Government adopts the contrary view.

8

To be sure, the arguments or theories addressed at the earlier hearing before Judge O'Sullivan are different from those later cited by Claimant for his subsequent cancellations of scheduled depositions. In the months since the informal conference before Judge O'Sullivan, Claimant has repeatedly raised concerns that a criminal investigation into the events at issue in this civil forfeiture action is underway, and he has attempted to avoid deposition in the United States on these grounds. The Undersigned is reluctant to brand his stated concern over being arrested or being embroiled in a criminal investigation (or having his deposition answers in a civil forfeiture lawsuit given to criminal investigators) as completely irrational.

As a New Mexico magistrate judge addressing a motion to compel production of documents from a non-party in this case put it recently, "[t]he government suspect[s] that Combe Fritz and his father were part of an illegal operation to smuggle ancient artifacts into the United States." [ECF No. 115-1, p. 2]. Moreover, Federal Bureau of Investigation special agents have interviewed fact witnesses in this civil forfeiture case and Government counsel expressly advised Claimant's counsel that his client needs to be advised of his Fifth Amendment rights.

Claimant contends that he has, to date, refused to appear for subsequent deposition dates because of his fear that he might be arrested should he enter the United States, even for the limited purpose of a civil deposition, or that his deposition testimony might be used against him in a criminal case. These are reasons wholly apart

from those addressed by the March 25 Order, which noted only that Claimant's deposition should "go forward." [ECF No. 42].

In addition, Claimant notes that the March 25 Order does not set a specific date for the deposition, nor does it require Claimant to appear for a deposition by a date certain.  Finally, Claimant emphasizes that the March 25 Order was not issued in response to a motion to compel and is conditioned on a consultation between counsel for scheduling Claimant's deposition.

Claimant's counsel did in fact **agree** to four deposition dates following the March 25, 2014 discovery conference ruling. In his response [ECF No. 95] to the Motion to "dismiss," Claimant contends that the deposition dates were not "missed" because the Government set those dates unilaterally and Claimant never agreed to them. [ECF No. 95, p. 8]. At the Hearing, however, Claimant's counsel conceded that this argument was "inartful." He conceded that a more-accurate description would be that he *conditionally* agreed to the dates (even though this was not clearly articulated in confirming emails) but that circumstances (e.g., his client's inability to obtain a visa, the Government's delay in assuring that Claimant would not be arrested, Claimant's renewed concern over the existence of a criminal investigation when the AUSA issued a pre-deposition written warning reminding counsel to instruct his client about his Fifth Amendment rights) forced him to cancel the depositions.

The succinct March 25 Order can easily be interpreted as an order sufficient to justify sanctions under Rule 37(b) for failure to obey a court order.  First, it is entitled "order." It contains the typical "ordered and adjudged" language, and it directs a discovery event -- that Claimant's deposition should "go forward." [ECF No. 42]. Moreover, although it does not pinpoint a date and leaves the specific scheduling to counsel after consultation, it specifically requires the deposition to go forward "at this time." [*Id.*].

On the other hand, it is perhaps also theoretically *possible* to interpret it as something short of the type of order which would justify sanctions. Neither side has cited any authority construing similar informal discovery rulings to support their arguments that the March 25 Order is (or is not) the type of order which could support a discovery sanction such as dismissal under rule 37(b). The Undersigned rejects Claimant's argument that a discovery order necessary to justify sanctions under Rule 37(b) must be in response to an express motion to compel.  Claimant has not cited any cases to support that theory and the Undersigned does not find it persuasive, especially because Rule 37(b) contains no such requirement.

Although the Undersigned would conclude that the Government has the better argument on how to interpret the March 25 Order, I need not decide the issue because the Government has adopted an all-or-nothing approach to sanctions -- demanding outright dismissal as the only sanction it seeks. Therefore, I conclude that dismissal

would be too extreme of a sanction for a Rule 37(b) violation even if the prior discovery ruling was an order whose violation might trigger some type of sanction.

### c. Dismissal is too harsh a sanction under the circumstances.

Dismissal would be inappropriate here because courts are required to consider lesser sanctions before resorting to outright dismissal. In *Malautea v. Suzuki Motor Co., Ltd.*, 987 F.2d 1536 (11th Cir. 1993), the court analyzed Rule 37(b) sanctions and highlighted the restrictions which reign in the broad discretion that trial courts have to fashion appropriate sanctions for violation of discovery orders. Specifically, the appellate court held that (1) "a default judgment sanction [which the Undersigned notes is analytically similar to dismissal of a claim in a forfeiture case] requires a willful or bad faith failure to obey a discovery order," (2) violation of a court order "caused by simple negligence, misunderstanding, or inability to comply will not justify a Rule 37 default judgment or dismissal," and (3) the "severe sanction of a dismissal or default judgment is appropriate only as a last resort, when less drastic sanctions would not ensure compliance with the court's orders." *Malautea*, 987 F.2d at 1542 (internal citations omitted).

As noted, however, the United States has not asked for any other sanction, such as an order precluding claimant from testifying at trial, an order giving the Government

leave to take Claimant's deposition after expiration of the discovery deadline, or an order precluding Claimant from taking depositions of CBP officers, etc.[5]

The United States argues that Claimant's failures to appear for noticed depositions are part of an improper strategy to avoid complying with Magistrate Judge O'Sullivan's March 25 Order. But the cancellations of several of the depositions cited in the motion do not necessarily support the Government's theory.

First, the March 13, 2014 deposition was scheduled *before* the discovery order, so Claimant's failure to appear cannot be construed as violation of a Court order. Second, the May 13, 2014 deposition was canceled more than a month before it was to occur because Claimant had travel plans which prevented him from traveling to the United States before mid-May. It is difficult to find a willful violation to travel from out of the country for a deposition when a party has a scheduling conflict. Third, the May 22, 2014 deposition was rescheduled for June 12, 2014 because Claimant likely would not have timely obtained his visa. Although the United States may suspect that Claimant delayed the scheduling of an interview for the required visa, this is only a theory and the Government has not convinced me of its hunch with actual evidence or circumstances beyond pure speculation, especially when Claimant shortly thereafter did obtain his visa.

---

[5]    The United States did not explain in its motion or reply why it did not seek alternative, other sanctions besides dismissal.

Fourth, the June 12, 2014 deposition was by agreement continued to June 30, 2014 so that Claimant's counsel could discuss with his client the Government's written request that he review the standard Fifth Amendment warnings before the deposition. An *agreement to reschedule a deposition* cannot, of course, be construed as a purposeful **failure** to attend the very deposition which was postponed through a stipulation. Finally, the fifth deposition at issue, the one scheduled for June 30, 2014, did not occur because Claimant filed a cross-notice for hearing concerning a June 26, 2014 discovery hearing. That cross-notice noted that Claimant wanted a stay, a protective order limiting the use of discovery to the civil forfeiture case only and reassignment of the case to the Complex Track or a six-month discovery deadline extension. [ECF No. 64].

At the June 26, 2014 hearing, the Undersigned noted that the District Court would be a more-appropriate forum for a motion for an order staying the case indefinitely and suggested Claimant file a formal, written motion if he wanted a stay. [ECF No. 72]. In addition, the Undersigned authorized Claimant to file a motion for a protective order on the scope of the Government's use of discovery obtained in this case and whether an order should be issued directing the Justice Department to grant Claimant immunity. [*Id.*]. Likewise, the Undersigned authorized Claimant to file a motion if he wished the District Court to transfer the case to the Complex Track under Local Rule 16.1(a)(2). [*Id.*].

Claimant followed through on the Undersigned's discovery ruling and filed three separate motions [ECF Nos. 73, 74 and 75]. The District Court denied two of those motions [ECF Nos. 74; 75], and the Undersigned granted in part and denied in part the third [ECF No. 73]. These rulings, while largely adverse, do not show that Claimant was acting in bad faith when he filed the motions.  According to Claimant, he was merely following the Undersigned's suggestion to raise these arguments with the District Court.

Given the procedural history outlined above and given that the United States never sought to reschedule Claimant's deposition during the enlarged discovery period, dismissal of the claim would be an unduly harsh consequence.

### d.  Rule 37(d) does not justify dismissal.

Rule 37(d) permits discovery sanctions for, among other things, a party's failure to attend its own deposition, and does not specifically require violation of a court order for a court to impose sanctions. *Immuno Vital v. Telemundo Group*, 203 F.R.D. 561, 566 (S.D. Fla. 2001). So, Rule 37(d) could theoretically be a proper basis for sanctions in a case, like this one, where the Government complains about its inability to take Claimant's deposition.

At the risk of restating the obvious, the only sanction the Government has sought in its motion is outright **dismissal** of the claim, arguing that Claimant's conduct is willful and in bad faith. However, as noted, dismissal with prejudice of a case as a Rule

37 discovery sanction is disfavored and can only be entered after a consideration of whether a less-drastic remedy could have been fashioned. *Mene*, 238 F. App'x at 582; *see also Griffin v. Aluminum Co. of Am.*, 564 F.2d 1171, 1172 (5th Cir. 1977) ("Dismissal of a complaint with prejudice is such a drastic remedy that a district court should apply it only in extreme circumstances.").

According to the Eleventh Circuit, "dismissal *with prejudice,* whether on motion or *sua sponte,* is an extreme sanction that may be properly imposed *only* when: '(1) a party engages in a clear pattern of delay or willful contempt (contumacious conduct); and (2) the district court specifically finds that lesser sanctions would not suffice.'" *Betty K Agencies, Ltd. v. M/V MONADA*, 432 F.3d 1333, 1337-38 (11th Cir. 2005) (internal quotation and citations omitted) (emphasis in original).

The Government argues that Claimant and his counsel embarked on a willful, six-month effort to delay the Claimant's deposition.  But there are other factors at issue here.

First, it should be noted that the Government waited nearly three years after detaining the artifacts at issue in this case before filing a forfeiture action and waited more than half a year to file the lawsuit after Claimant posted the requisite bond. At the hearing, Government counsel explained that she had been busy with other cases.

Since then, it is true that Claimant has not been deposed, and arguably he has avoided deposition thus far, but some of this delay was caused by circumstances other

than bad faith failures to appear for a deposition. For instance, as outlined above, an agreement by government counsel to reschedule a deposition cannot now be fairly branded as Claimant's bad faith failure to appear at a scheduled deposition.

Second, Claimant offered to have his deposition taken by video conference, but the Government refused the request. [ECF No. 95, p. 17]. Claimant has not cited any case law *requiring* the Government to agree to those arrangements, but much of the delay the Government believes warrants sanctions here could have been eliminated had Claimant's deposition gone forward by video. Claimant's willingness to give a deposition by video also shows that he was at least ostensibly working to resolve issues related to his deposition, rather than simply engaging in a pattern of delay.

Third, the lawyers on both sides of this case have repeatedly shown that they do not always get along well and have repeatedly been unable to communicate clearly and successfully.  This level of acrimony makes even scheduling depositions difficult.

Fourth, as already noted, Claimant says he has a fear of criminal prosecution concerning the facts and circumstances surrounding this civil forfeiture action. Initially, Claimant sought a guarantee of safe passage from the Government that would somehow ensure he would not be arrested should he appear in the United States for deposition. [ECF No. 93-23, p. 2]. This was eventually provided in a manner that alleviated Claimant's concerns, and the deposition was then re-noticed for June 12,

2014. [ECF No. 87-1, p. 2]. But, in an email the Government sent Claimant's counsel before that deposition, Government's counsel stated:

> I am sure Mr. Combe will be coming to see you ahead of time. **I would suggest that you explain his Fifth Amendment privilege to him** carefully beforehand, since he will not have the familiarity with it that most citizens do. I have seen non-English speaking witnesses become extremely confused at the explanation. (emphasis supplied).

[*Id*.]. As Claimant's counsel explained, this Fifth Amendment reference re-ignited alarm that this civil forfeiture action is being used by the Government as a stalking horse for an ongoing criminal inquiry. [ECF No. 95, pp. 18-19].

At the Hearing, Government counsel initially explained that she issued this written Fifth Amendment warning shortly before the deposition in order to save the time of having the warning translated from English to Spanish at the deposition. The Undersigned is not persuaded by this explanation, as the amount of time which might be saved would be extremely modest -- e.g., less than one minute. Government counsel then said she issued the warning because she wanted to make sure that Claimant's counsel was aware that his client's deposition answers could be used against him. The Undersigned is not convinced by this theory, either, as Claimant's counsel is an experienced attorney[6] and advised the Court that he was and is fully aware of the basic rule that his client's deposition testimony could be used against him.

---

[6]    Claimant's counsel is a former state prosecutor and public defender. His website biography explains that he has "vast experience in representing clients in both civil and **criminal** enforcement actions relating to import and export . . . " (emphasis added).

Government counsel ultimately conceded that she *now* (as a result of the discussion at the Hearing) understands how her sudden Fifth Amendment warning shortly before the deposition was to take place in the United States may have generated grave concern that the Government's "safe passage" reassurance might not be sufficient to sufficiently address Claimant's concerns. Nevertheless, she said that she did not intend to intimidate Claimant at all with this statement, though she now appreciates how the comment might be viewed as intimidating.[7]

When asked at the Hearing if there was any case law supporting the extreme sanction of dismissal in a case like this, Government counsel referenced two cases cited in her Motion. [ECF No. 87, p. 5]. However, both of those cases are inapposite.

In the first, *U.S. v. $343,726 in U.S. Currency*, 271 F. App'x 972, 973 (11th Cir. 2008), the 11th Circuit upheld dismissal of a forfeiture claim pursuant to the Fugitive Disentitlement Act, and also agreed with the district court's alternative grounds for dismissal of the claim for discovery violations. But that case was very different than this

---

[7]   Also at the Hearing, Government counsel unequivocally represented that no criminal investigation against the Claimant is underway and further explained that it is typical for federal law enforcement agents to assist AUSAs in *civil* forfeiture cases. Claimant's counsel argued that although *CBP* officers might assist in forfeiture cases involving customs and trade violations, he deemed it highly unusual and suspicious that the **FBI** questioned fact witnesses in this purely civil lawsuit. The Government, however, stressed that civil forfeiture cases are always based on violations of federal *criminal* law and further explained that the FBI's involvement in a CBP-based civil forfeiture case was not unusual and did not indicate the presence of a criminal investigation.

one. There, the claimant failed to appear for a properly noticed deposition and then defied **several** district court orders to appear. As discussed above, there is no such history of clear cut abuse here. In addition, the district court had previously imposed lesser sanctions to no avail. It dismissed the case only after the lesser sanctions did not work. According to the 11th Circuit, "[b]ecause lesser sanctions proved to be ineffective in this case, however, the district court was not required to impose additional futile sanctions before dismissing [Claimant's] claim." *Id*. There have been no other sanctions imposed against Claimant in this case, and in fact, the Government has not even requested any sanctions prior to filing this Motion. Finally, there is only one order (and a succinct one at that, following an informal discovery motion not involving a motion to compel) at issue here, not the myriad orders entered in the currency forfeiture case.

The other case noted by the Government also involved dismissal of a case as a sanction for a violation of a court order, specifically, an order compelling document production. *United States v. One 32' Scorpion Go-Fast Vessel*, 339 F. App'x 903, 904 (11th Cir. 2009). In its opinion, the 11th Circuit specifically noted that the "severe sanction of a dismissal or default judgment is appropriate only as a last resort, when less drastic sanctions would not ensure compliance with the court's orders." *Id*. (internal quotation omitted). Again, in the case at hand, dismissal is an extreme sanction, and is simply not justified on these facts. The Government's Motion to Dismiss the Claim for Failure to Produce Discovery is **DENIED.** Because the Government did not seek any other type of

sanction besides dismissal (and actually styled its motion as one for dismissal), the Undersigned will not speculate on how I would have ruled had the United States requested other types of discovery sanctions.

### III.   Observations.

The Undersigned believes it is appropriate to briefly highlight the procedural posture of this case. The discovery deadline, which was already enlarged, expired on September 1, 2014. [ECF No. 105]. Not even one fact witness deposition has been taken even though the parties advised the Undersigned at the Hearing of their intent to take the depositions of the Claimant, five CBP officials, and multiple Peruvian officials.

At the Hearing, the Government advised the Undersigned that it would *not* be prepared to go to trial under the now-in-effect trial scheduling order because it has taken no fact discovery. Claimant's counsel contended that he *could* be prepared for trial, notwithstanding the complete lack of deposition discovery in this case. Claimant's counsel did acknowledge trial would be exceedingly difficult without deposition discovery.

Unless the trial scheduling order is amended, the parties will be compelled to participate in a trial without basic pretrial discovery. They will, in effect, be required to try the case through the unenviable practice of "winging it."

The Undersigned does not have the authority to extend the discovery cutoff or trial date. The Undersigned takes no position on whether the parties should seek a

21

continuance of either deadline, nor do I imply that the District Court should rule in any particular way should the parties file such motions.[8]

      **DONE AND ORDERED** in Chambers, in Miami, Florida, September 17, 2014.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to**:
Honorable Joan A. Lenard
All Counsel of Record

---

[8]     In its Order granting Claimant's motion for a two-week discovery extension, the District Court noted that all other deadlines in the initial Scheduling Order remain in full force and effect. [ECF No. 105].